Mr. Job. Thank you, Your Honor. Yes, I'm Robert Job, and I'm appearing today on behalf of the petitioner Gurmeet Singh, whose problems in adjusting his status really began on or about February 1st of 2000, when the Immigration Service Office, the California Service Center, supposedly transferred his visa petition to the local INS office in San Francisco. It never made it there. It's been lost ever since. In the year 2000, when Mr. Singh and his wife hadn't heard anything from the Immigration Service, they made three separate visits to the Immigration Service in San Francisco and in San Jose. And each time, the Immigration Service told them that they were unable to locate the petition. During their last visit, they told them that their petition quite possibly could be in another state. In any event, because the Immigration Service lost Mr. Singh's visa petition, when he filed this motion to reopen, he was unable to include an approved visa petition. And under the board's decision of Velarde Pacheco, he could reopen his case to seek adjustment of status, therefore, only if his motion was timely, included clear and convincing evidence of the bona fides of his marriage, and only if it was not opposed by the Immigration Service. Now, in this case, neither the Immigration Service nor the board ever questioned the bona fides of Mr. Singh's marriage. Although the government opposed our motion to reopen, they did not do so on the grounds that the marriage was not bona fide. The board denied the motion to reopen, in this case, on two grounds. First, it found that the motion was untimely. And further, it found that the motion must be denied because the Immigration and Naturalization Service had opposed it. Although its discussion of the timeliness issue is cursory, the board appears to have found that Mr. Singh could not avail himself of the doctrine of equitable tolling because he failed to fully comply with the board's decision in a matter of losada. In doing so, the board simply agreed that Mr. Singh's marriage was not bona fide. The board ignored the law of the circuit, as expressed in this Court's decision in Castillo-Perez and subsequent cases, that holding that the failure to fully comply with losada is not fatal to a motion to reopen, where ineffective assistance of counsel is plain on the face of the record. And here, the record plainly shows that Mr. Singh's former counsel, Bruce Burns, had failed to carry through on his promise to file a motion to reopen. And also, the record clearly shows that we, at a minimum, substantially complied with a matter of losada. Mr. Singh's sworn declaration that Mr. Burns failed to follow through on his promise to file a motion to reopen is fully corroborated by the e-mail correspondence that we presented with the motion to reopen. On August 9, 2002, the day after a petition for review was due in this Court, Mr. Burns wrote to Mr. Singh, somewhat disingenuously, given that the time period for filing a petition for review had lapsed the day before, and said that, quote, it would be a waste of time, he said, to file a petition for review. Mr. Burns has resigned from the bar? Yes, Your Honor. He resigned. In the face of your client's complaint? With charges pending. Our client had filed a complaint, but according to the State Bar web page, he had embezzled funds from trust funds from another client. One follow-up question to that. Yes. Did he ever respond to your client's bar complaint? No, Your Honor. He did not. Mr. Burns indicated in that e-mail, however, on August 9, quote, there is another way we can help you, and he said, quote, I will contact you over the weekend, unquote, to discuss. Now, in his sworn declaration, Mr. Singh says that Mr. Burns then, quote, promised that he would file a motion to reopen at the Board of Immigration Appeals. And after that, the e-mail correspondence reflects that Mr. Singh was gathering documents in support of that motion to reopen. He sends Mr. Burns an e-mail on September 20, 2002, asking, did you get a chance to look at the stuff I gave you? You mentioned when we last met that we have to file something with the BIA within 90 days of their decision on my political asylum appeals case. When are you planning to file? At some point, Mr. Burns responds to the questions about documents, referring to a medical. He says in an e-mail, I can't recall whether you're going to need a medical or not. On September 26, Mr. Singh e-mails Mr. Burns again. Quote, if you need any other documents, please let me know, because it's almost three months since the BIA denied my appeal. On October 1, Mr. Singh writes, I didn't hear from you. Aren't we getting late in filing something with the INS or the BIA? One week later, on October 8, 2002, the 90-day deadline passed for filing a motion to reopen, and nothing was filed. Now, ironically, according to the INS's own records, three months later, in January of 2003, Mr. Burns was still promising to file a motion to reopen. In denying the stay request that Mr. Burns had filed with the INS in January of 2003, the INS says, quote, despite the claim that a motion to reopen would be filed, it appears that no motion has been filed to date, despite your client's detention. And if you look at the stay motion that Mr. Burns filed with this court in January of 2003, he filed a stay motion with this court without ever filing a petition for review. And in that stay motion, he again indicates an intention to file a motion to reopen. He just never got it together. He never filed it. The ineffective assistance of counsel in this case is patently clear on the face of this record. Now, with regard to whether we substantially complied with the board's procedural requirements set forth in the matter of Losada, I first want to describe the context in which we filed Mr. Singh's motion to reopen. Because I think you need to understand, when we filed this motion to reopen, Mr. Singh had been in custody already for three weeks. He had missed the period for filing a petition for review with this court, although he had requested a stay of deportation from the Immigration and Nationalization Service through Mr. Burns, that stay request had already been denied. And the only thing that was preventing his removal from the United States to India was the frivolous, patently frivolous stay motion that Mr. Burns had filed with this court without first bothering to file a petition for review. So to have any prospect of success, he needed to file a motion to reopen ASAP. And we did. We filed it as quickly as we could. And in doing so, we did everything we could within the constraints that we were facing to comply with the matter of Losada. We had Mr. Singh prepare and sign from custody a sworn declaration explaining his allegations against Mr. Burns. We provided Mr. Burns with a copy of that declaration. We indicated in a letter to Mr. Burns that we were filing a motion to reopen, alleging ineffective assistance of counsel. We indicated that we were filing a bar complaint, or we actually indicated that we had already filed a bar complaint in compliance with the matter of Losada. The only thing that we didn't do is we didn't give him an opportunity to respond before we filed our motion. But that's for obvious reasons. If we'd waited, we'd still be waiting, obviously, because he never did respond. But we needed to get the motion filed as quickly as possible. And we told him we were filing the motion at the board. He could have, if he'd wanted to respond, certainly, forwarded a response directly to the board. But he didn't do that. He simply didn't respond. And instead, he chose to resign from the practice of law in the state of California with charges pending against him. Now, the other thing about Losada compliance here is that the Immigration Service, now DHS, although they opposed our motion, they never argued to the board that we had failed in any way to comply with the matter of Losada. It simply didn't press that point. It mentions matter of Losada in its opposition, but the only mention the Immigration Service makes of Losada in that motion is arguing that the ineffective assistance of counsel in this case was not so severe as to impinge on the fundamental fairness of the hearing. Well, what was the subject of their opposition, their primary? They argued, Your Honor, that the motion should be denied because it's untimely. And they argued that the motion should be denied in the exercise of discretion because Mr. Singh married during the course of deportation proceedings, because the immigration judge had found his asylum claim not credible. And this is the main thing I want to stress here in my last minute and 25 seconds is the board never evaluated on its own. It never brought its own independent judgment to bear on those reasons that the Immigration Service provided. Under matter of Velarde Pacheco, the board said, look, if the Immigration Service offers an opposition, no matter how unfounded, we must deny the motion. Was Velarde Pacheco an untimely motion? In Velarde Pacheco, the motion was filed within 90 days. But our position here is that our motion is timely as well, because under the doctrine of equitable tolling, it has to be treated as a timely filed motion. And if you treat it as a timely filed motion, you still have to deal with this issue of Velarde Pacheco, which says that no matter what the motion is, no matter what the strength of our case, no matter how strong the evidence about the bona fides of the marriage, if the government offers any reason whatsoever, any opposition whatsoever, the board says, we're going to deny it. In our view, that violates the board members' duty. Under the regulations, these board members have an obligation to bring their own independent judgment and discretion to bear on motions to reopen. They can't simply rubber stamp the position of the Immigration Service. But that's precisely what they did in this case. Yes, Your Honor. Thank you. Thank you for your argument. We'll hear from the government at this time. Ms. Lovings. Good morning. I represent the United States Department of Justice in this case. The problem with Petitioner's argument is that because he failed to comply with Lozada's requirement that you notify opposing counsel and give or notify prior counsel and give prior counsel an opportunity to respond to the allegations. A response that he never made. We don't know that. We don't even know, according to the board, which they found, they found that we don't even know if Petitioner properly served Mr. Burns with anything. There's no evidence in the record that the complaint was actually mailed. The bar complaint that was attached to it was actually incomplete. And if you, you know, although this Court should not be looking at all the extra record material that Petitioner submitted with his brief, it does appear that, you know, the State Bar even asked for more information because they didn't know, was Mr. Burns ever even retained? There's no evidence. They asked, you know, for more information on how he was actually hired, what kind of payments were made. So the State Bar complaint was incomplete. The board could not determine if it was even mailed to Mr. Burns. And Petitioner has admitted that he did not give Mr. Burns time to respond to those   by number, the complaint that had been filed against him by Mr. Singh? I don't have any information on that, Your Honor. Is the answer to that yes? I'm not sure, Your Honor, why exactly he resigned. You know a lot about this case, but you don't even know whether the letter of resignation references the specific number of Mr. Singh's complaint?  However, even assuming it does. Let's assume it does. You know, you're going to get along a lot better with me. I don't know about the rest of the panel. If you wait until you hear my question before you answer, okay? I'll give you a full chance to answer. You just listen to the question. May we assume that if his letter of resignation contains that number, that specific reference to the Singh Bar complaint, that Mr. Burns received a copy of that complaint? Is that a fair inference? Your Honor, he may have been notified by the State Bar. It still doesn't mean that he received the letter from Petitioner that he was required to send him. So the defect that the government relies upon is the failure of Singh to notify Burns, who had a history of not responding to Singh's request, of his filing or intention to file a bar complaint. That's it. No, Your Honor. That's not it. That's not what the government is arguing.  What else? The main thing that did not occur was that Petitioner did not give Mr. Burns an opportunity to reply. And he's already said, I didn't give him an opportunity because I was in detention and I just didn't, I couldn't. So Mr. Burns is never going to allow you to respond to that. Are you suggesting that he should have given him an opportunity to reply and let the board wait and let him sit in detention for forever? Because obviously the guy is not going to reply. He ended up resigning instead of replying. Well, Your Honor, Petitioner didn't, I mean, Petitioner was well aware, at least by the time the board, the motion to reopen was not timely filed, which would have been October 7th, maybe a few days afterwards, and could have contacted the board to say, hey, did you get the motion to reopen, since he was very on top of deciding whether, determining whether Mr. Burns was going to file this. He then waited until the end of January. Lay people don't like to write to courts or boards or anything like that directly. That's why they hire lawyers. Well, Your Honor, it's very... You know, if he was on top of everything the way you suggest, he would have filed his own petition. Then we wouldn't be in this position. But, of course, then lawyers would be out of business, and so would the Department of Justice. Well, Your Honor, he was on top of this, according to his emails, which... Well, he has a duty. In order to request or to have the doctrine of equitable tolling even apply to a case, Petitioner has a duty to act with diligence. And once Petitioner knows or should reasonably have known that the attorney was defrauding him or, you know, abusing him, he has a duty to act. And he waited until the first 90-day period. Even if you give him that, he waited an additional 90-day period until he was actually told he needed to report to the INS and was put in detention before he did anything. At that point, he still continued to ask Mr. Burns to represent him. He had Mr. Burns file a stay. And then it wasn't until the end of January that he finally got a different attorney. But by then, we're already beyond the second 90-day period. So the doctrine of equitable tolling requires that the petitioner act with diligence. And here the record clearly shows that he was aware, at least by the date that the case was filed, that none had been filed. So at that point, he should have started looking for another attorney. What's the purpose of the Lozada notice requirement? It's intended to ensure that there's an adequate factual record and that the complaint is legitimate and substantial. I would have thought that its principal purpose would have been to give the attorney a chance to respond. Well, that's how you ensure an adequate factual record, so that you can allow the Petitioner says one thing. What is Attorney Burns' response? We don't even know here. I mean, according to the documents that Petitioner filed with his brief, it looks like Mr. Burns didn't even receive a check until November, which is long after the July motion to reopen issue. So we don't even know if Mr. Burns was retained. I mean, an alien can contact an attorney and ask him immigration questions. It does not mean he's actually retained him, which is also what the California Bar was asking. Was he even retained? Did you pay him? And according to Petitioner, there was no retainer agreement. And he was Mr. Burns didn't even receive a check until long after the motion to reopen expired. And in the face of what you contend is this wholly inadequate, factually bereft complaint, the attorney resigned his membership in the State Bar. Is that right? I don't know why the attorney resigned. And, Your Honor. And the reason we don't is because he didn't respond. Well, he wasn't given an opportunity to respond. And this court needs to look at what was before the board. And the issue before the court is whether the board abused his discretion. Did it act arbitrarily and capriciously? Did the board give him an opportunity to respond? By the time the board got it, I mean, he was not given an opportunity. All right. So it takes a lot to ask a clerk, hey, write a letter to this guy, find out what his position is. The board, I mean, Your Honor, you realize how busy the board is as well. That's why they put the onus on Petitioner to make sure that they comply with Lozada so that, and this Court in Rays and Castillo has said that if the, on the face of the record, the ineffective assistance of counsel claim is undisputed and plain, then the Lozada requirements can be relaxed. However, it is not undisputed and plain because we didn't get a chance to hear from Mr. Burns. And we didn't get a chance to hear from Mr. Burns because Petitioner admits that he didn't hear from Mr. Burns. Assume that you, instead of getting a chance to hear from Mr. Burns, you got his resignation with reference to this complaint. All right? Yes, Your Honor. Like the state of the record from what we can figure out is now, although it's not in the record. Then what happens? Assuming that it was in the record that he signed. Yeah, assume it was. Well, I would agree that in that hypothetical case, which is not the case here, that that could possibly, that would be a reason to toll, you know, and to allow him to relax the Lozada rules. Here we don't have it. And Petitioner has admitted he didn't give him time to respond because he was in detention. Is there any other points you'd like to cover in your remaining couple of minutes? I would like to touch really quickly on the Viardi-Pacheco issue. The Board, when it, I mean, the government's opposition to the motion to reopen was based on the fact that the, it was time barred, it was untimely, and there wasn't evidence that he had actually been defrauded by the attorney. They also mentioned that he was married while he was in deportation proceedings, which they question whether the bona fides. It's a legitimate question. Under Viardi-Pacheco, a properly filed motion to reopen can be granted if it's timely, not numerically barred. It's not barred by matter of char, which is the voluntary departure, and the government doesn't oppose based on his inability, his failure to voluntarily depart. But there's a strong likelihood of the bona fides and the services in opposing based on an unadjudicated visa petition. That's not the case here. And the Board correctly in their decision pointed out that that is not the case, and they were denying it because it was untimely and because he was not defrauded by an attorney. So Petitioner is not, he cannot. Kennedy. Well, what they said was it's untimely and the government opposes it. Pardon? What they said was it's untimely and Viardi doesn't apply because this is untimely and the government opposes it. Right. And that's well within Viardi. And the Board denied the motion to reopen because it was untimely and Petitioner failed to comply with Lozado was the main reason. Last question. Did the government argue Lozado to the BIA? Your counsel suggested that. No, they did not. But the Board, when deciding an untimely motion to reopen in equitable tolling, they have to look at whether Lozado, whether he's complied with Lozado where it's based on an ineffective assistance of counsel claim. But the answer is the government didn't. They did mention Lozado. I don't believe that it was their main point of view. But they didn't believe that Petitioner had established that he was ever defrauded. Okay. Thank you for your argument, counsel. Mr. Jobe, do you have a few seconds? Yes, Your Honor. We filed our motion to reopen on January 28th, 2002, and at that time we sent Mr. Burns a letter, as I referenced earlier. And we sent the Board that very letter. The Board denied the motion to reopen in July of 2003. So Mr. Burns had six months or more to respond. He didn't. Okay. Thank you. Thank both sides for their argument. The case to be argued will be submitted for decision and will proceed to the next case, which is the habeas case involving Mr. Singh. Mr. Olson.
judges: Canby, Hawkins, Duffy